RECEIVED

MAR - 3 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

---

THOMAS R. HOWELL

VERSUS

TOWN OF BALL, ET AL.

CIVIL ACTION NO. 12-951

JUDGE TRIMBLE

MAGISTRATE JUDGE KIRK

---

<u>MEMORANDUM RULING</u>

Before the court are two motions for summary judgment seeking dismissal of all claims by Plaintiff, Thomas R. Howell, against Defendants Town of Ball, Aldermen Willie Bishop ("Bishop"), Alderman Chris Covington ("Covington"), Alderman Jerry Giddings ("Giddings"), Alderman Ginny Poteet ("Poteet"), Alderman Curtis Robertson ("Robertson") and former Mayors Roger Toney ("Mayor Toney") and Roy Hebron ("Mayor Hebron").[1] For the reasons expressed herein below, the court finds that the first motion, filed by Defendants Town of Ball, Alderman Bishop, Alderman Covington, Alderman Giddings, Alderman Poteet, Alderman Robertson and Mayor Toney should be **GRANTED** in part and **DENIED** in part.  The court finds that the second motion, filed by Mayor Hebron should also be **GRANTED** in part and **DENIED** in part.

Also before the court is a motion for attorney fees filed by former Defendant Chief Daniel Caldwell.[2]  The court finds that this motion should be **DENIED**.

---

[1] R. 102, 104.
[2] R. 128.

I.      BACKGROUND

A recitation of the relevant facts of this case may be found at Record Document Number 27.

II.     APPLICABLE STANDARDS OF LAW

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law.  The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[3]  The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[4]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[5]  In so doing, the nomoving party establishes the existence of a genuine issue of material fact for trial.  The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[6]  A party whose claims are challenged by a motion for summary judgment

---

[3] Fed. R. Civ. P. 56(c)(1)(A).
[4] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[6] Celotex, 477 U.S. at 325.

may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[7]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings.  If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[8]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[9] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are "unsubstantiated assertions" and "conclusory allegations[.]"[10]  The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[11]

### III.    ANALYSIS

#### Claims under the False Claims Act

31 U.S.C. § 3730(h), known as the "whistleblower provision" of the False Claims Act ("FCA"), prohibits employers from, inter alia, discharging employees who report an employer's violation of the FCA.  In essence, it prohibits retaliation in its many forms and, thus, encourages employees to assist the government in preventing fraudulent claims.[12]

---

[7] Id.
[8] Id. at 322.
[9] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).
[10] Little, 37 F.3d at 1075, citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).
[11] Lujan, 497 U.S. at 888.
[12] Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994).

Case 1:12-cv-00951-JPM   Document 149   Filed 03/03/15   Page 4 of 23 PageID #:  3091


We have previously dismissed Plaintiff's claims under this provision against Chief Caldwell, Mayor Toney, Mayor Hebron, Aldermen Bishop, Giddings, Robertson, Covington, and Poteet on the basis that these Defendants were not Plaintiff's "employer" as required for the right of action arising under this statute.  Plaintiff's sole remaining claim under this provision lies against the Town of Ball, his employer as previously determined by this court.[13]

Defendants' brief correctly cites the applicable law on this issue.  In order to establish a prima facie case of retaliation under the FCA's whistleblower provision, Plaintiff must show: (1) that he was engaged in protected activity under the FCA; (2) that the employer knew of the protected activity; and (3) that he was discharged because of the protected activity.[14]  In the case at bar, Plaintiff has clearly demonstrated that he participated in protected activity when he became a confidential informant to the FBI during its investigation of fraudulent FEMA claims. We also find that Plaintiff has demonstrated that his participation as a confidential informant was a protected activity under the FCA, as it constituted an effort to expose and stop a violation of the FCA.[15]

Our review of Defendants' brief does not reveal any dispute that Plaintiff has successfully established the first two elements of his prima facie case.  Rather, Defendants dispute the causation element, asserting that the Town of Ball's Board of Aldermen ("Aldermen") were aware of Plaintiff's participation in the FBI investigation, but based their

---

[13] R. 27, 28.
[14] Robertson, 32 F.3d at 951.
[15] 31 U.S.C. § 3730(h); Robertson at 951.

decision to terminate Plaintiff's employment solely on Chief Caldwell's recommendation, detailing Plaintiff's insubordination on or about May 31, 2011.[16]

A great volume of evidence was submitted in connection with this motion, much of which pertained to this issue. The court spent vast amounts of time reviewing the evidence and finds that it raises a genuine issue of fact regarding the element of causation.

Deposition testimony from each of the aldermen Defendants is offered to suggest that, while each alderman was aware that Plaintiff worked as an FBI informant, Chief Caldwell never expressed any motivation for wanting Plaintiff to be fired other than his insubordination of May 31, 2011.[17] Defendants also point out that, while Plaintiff was present at the meeting during which Chief Caldwell's recommendation to terminate Plaintiff was discussed, Plaintiff did not speak on his own behalf, leaving the aldermen with only Chief Caldwell's uncontroverted account upon which to base their decision.[18]

Plaintiff argues that the deposition testimony of the aldermen Defendants shows that these decision-makers acted as the "cat's paw" for retaliatory animus held by both Mayor Hebron and Chief Caldwell. In Gee v. Principi, a 2002 Fifth Circuit opinion in which the court considered a Title VII retaliation claim, the appellate court instructed that, though Long v. Eastfield College "reaffirmed the longstanding principle that, in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker[,]" it is also true that "when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the

---

[16] R. 102-1 at p. 10.
[17] R. 102-1 at pp. 10-11.
[18] Id. at p. 10.

5

protected activity and the adverse employment action remains intact."[19]  A party seeking to establish causation via cat's paw theory must show that the persons harboring discriminatory animus had influence or leverage over the decisionmaker.[20]

Plaintiff points out that each of the aldermen admit that they knew of Plaintiff's participation in the FBI investigation and that many had contact with Hebron and/or Caldwell after it was revealed that Plaintiff was a confidential informant against Hebron.[21]  Plaintiff also offers deposition testimony which he asserts demonstrates that both Hebron and Caldwell possessed retaliatory intent toward him because of the protected activity, including, but not limited to an attempt to convince others to falsify complaints against Plaintiff.[22]

Several issues become important at this stage of our analysis.  First, as cited by Plaintiff, although the Chief of Police is entitled to present his recommendation for termination to the Board of Aldermen and due consideration and due weight should be shown to such a recommendation, the failure of the decisionmaker – here, the Board of Aldermen – to conduct an independent investigation of the matter before them can create a jury issue in cases such as this one.[23]  In the case at bar, the evidence suggests that Plaintiff was notified on June 1, 2011 that the matter of his termination from employment would be considered at the next Board of Aldermen meeting, which was to be held on June 3, 2011.[24]  Chief Caldwell presented his recommendation to the Aldermen at an executive session preceding the general meeting on

---

[19] 289 F.3d 342, 346 (5th Cir. 2002).
[20] Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000)
[21] Deposition of Willie Bishop [R. 102-5] at 11:5-20; Deposition of Christine Covington [R. 102-7] at 10:7-14; Deposition of Curtis Robertson [R. 102-8] at 10:7-9; Deposition of Jerry Giddings [R. 102-10] at 18:6-18; Deposition of Genny Poteet [R. 102-9] at 12:9-15.
[22] Deposition of Kristan Delaney [R. 95-6] at 20:1-21:21; Deposition of Plaintiff [R. 102-3] at 60:12-61:11.
[23] Gee, 289 F.3d at 346, quoting Long, 88 F.3d at 307 ("the degree to which [the final decisionmaker's decisions were based on his own independent investigation is a question of fact…").
[24] R. 102-3 at Exhibit 1 (Letter to Plaintiff from Mayor Toney dated June 1, 2011 advising Plaintiff of rights).

June 3, 2011.[25] Plaintiff did not give a detailed response to the Chief's recommendation, but stated, in effect, that he was being retaliated against for his role in Mayor Hebron's conviction.[26] Thereafter, the Town Council meeting was convened and the Board of Aldermen voted unanimously to adopt Chief Caldwell's recommendation, thereby terminating Plaintiff's employment.[27]

In the context of summary judgment, we find that the evidence, when viewed in favor of the non-moving party, shows that each alderman Defendant possessed knowledge of Plaintiff's role in the FBI investigation which led to widespread criminal fraud investigation and prosecutions in the Town of Ball.  Additionally, the evidence demonstrates that, though Plaintiff expressed the belief that he was being retaliated against for his role in this protected activity, no effort was made to conduct an independent investigation of this matter prior to voting on the issue.   While Plaintiff was afforded two (2) days' notice of his right to defend his employment, defendants offer no authority which supports the idea that this fact would absolve the decision maker from the obligation to conduct an independent review of the issue, particularly when notice is given of a potential violation of rights.

Given these facts, we find that Plaintiff has produced sufficient evidence to demonstrate the causation element of his prima facie case under the cat's paw theory.  We also find the temporal proximity of the protected activity to the termination of employment supports the

---

[25] See, e.g., R. 102-9 at 6:24-7:13.
[26] R. 102-7 at 13:15-21; R. 102-8 at 17:3-5.
[27] R. 102-1 at p. 10.

7

causal link this case, particularly when viewed in conjunction with the remainder of the evidence presented.[28]

Our inquiry does not end there, however. Defendants' brief argues the applicability of the familiar McDonnell Douglas burden-shifting analysis, used in many § 1983 employment discrimination suits.  As explained by Mississippi's Southern District Court in the recent case McCollum v. Jacobs Engineering Group, Inc., the Fifth Circuit has yet to address the application of the McDonnell Douglas burden shifting analysis to FCA whistleblower claims where no direct evidence of retaliation is offered, though some district courts have applied it, noting the logical similarities between these claims and §1983 retaliation claims.[29]   We agree with the logic of applying McDonnell Douglas in this case and proceed accordingly.

Having found that Plaintiff has successfully established the elements of his prima facie case, the burden shifts to the Town of Ball to articulate a legitimate, non-prohibited reason for the adverse employment action it took against Plaintiff.[30]  Defendants assert, as they have from the inception of this litigation, that the sole reason for Plaintiff's termination is the recommendation of Chief Caldwell based on the episode of insubordination between Plaintiff and Caldwell on or about May 31, 2011.  Plaintiff does not deny that he was angry during his confrontation of Chief Caldwell and insubordination is a legitimate, non-retaliatory basis for Plaintiff's termination from employment.  Accordingly, the Town of Ball has successfully shifted

---

[28] Shackleford v. Deloitte & Touche, LLP, 190 F.3d 398 (5th Cir. 1999).
[29] 992 F. Supp. 2d. 680 (S.D. Miss. 2014).
[30] Id. at 688 citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).

the burden, again, to Plaintiff to come forward with evidence that this proffered reason is merely pretext for some impermissible retaliation.[31]

In order to meet this burden, Plaintiff must produce "substantial evidence" indicating that the proffered legitimate reason for his termination was pretextual.  Like Title VII, § 3730(h) prohibits retaliation "because of" an employee's participation in a protected activity. Accordingly, Plaintiff must show that his work as an FBI informant was the "but for" cause of the retaliation in this case.[32]

We find that Plaintiff has demonstrated sufficient evidence which, if found credible by the trier of fact, would create a reasonable basis for a finding of pretext in this case under applicable jurisprudence.  Kristan Delaney testified that she was asked by Mayor Hebron to falsify a complaint against Plaintiff to Chief Caldwell after Hebron became aware of Plaintiff's participation in the investigation which led to his arrest and conviction.[33]  Plaintiff testified that Caldwell frequently asked him if he was recording their conversations, even requiring him to open his shirt to prove that he was not wearing a wire.[34]  Chief Caldwell's own testimony also reveals that Caldwell misled Plaintiff about conducting an investigation regarding Plaintiff's alleged theft of a thumb drive device while on duty, the issue which Defendants assert sparked the insubordination upon which Plaintiff's termination was based.[35]  Plaintiff was not under investigation, but was told that he was suspected of wrongdoing.  There is no evidence that Caldwell presented this information to the aldermen in the executive or general session.

---

[31] Id. at 688.
[32] 31 U.S.C. § 3730(h); Willis v. Cleco Corp., 749 F.3d 314 (5th Cir. 2014) citing Long v. Eastfield Coll., 88 F.3d 300, 305 n. 4 (5th Cir. 1996).
[33] R. 95-6 at 20:1 – 21:15, 79:16-80:22.
[34] R. 102-3 at 95:14-20, 209:7-19.
[35] R. 102-4 at 75:9-15.

We find that this evidence, when taken as true for the purpose of this motion, would support a finding of pretext and, therefore, preserves Plaintiff's FCA whistleblower claim against the Town of Ball for further proceedings.  Defendants' motion for summary judgment will be denied as to this claim.

### Claims under 42 U.S.C. § 1983

#### *First Amendment Retaliation*

Due to prior dismissals by this court, Plaintiff's remaining First Amendment retaliation claims lie against the Town of Ball, as well as Mayor Toney, Mayor Hebron and the Aldermen Defendants in their individual capacities.[36]

A public employee does not lose his First Amendment right to comment on matters of public interest merely because he is employed by a government entity.[37]  On the other hand, government employers must have a "significant degree of control over their employees' words and actions...[in order to bring about]...the effective provision of public services."[38]  To establish a claim for First Amendment retaliation, a government employee must show: (1) that he suffered an adverse employment action; (2) that he spoke on a matter of public concern; (3) that his interest in commenting on the matter outweighed the public employer's interest in promoting efficiency; and (4) his speech motivated the adverse employment action.[39]

In the case at bar, Plaintiff has clearly demonstrated the first element, having been terminated from his employment.  The final three elements are contested among the parties. Whether or not the public speech at issue was a matter of public concern and whether or not

---

[36] R. 27, 28, 69, 70.

[37] Lane v. Franks, 134 S.Ct. 2369 (2014); Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty., 391 U.S. 563, 568 (1968).

[38] Garcetti v. Ceballos, 547 U.S. 410 (2006).

[39] Juarez v. Aguilar, 666 F.3d 325 (5th Cir. 2011); Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004).

the employee's interest in the public speech outweighed the employer's efficiency interest are questions of law, while whether or not the public speech motivated the adverse employment action is generally a question of fact.[40]

In the recent case Lane v. Franks, the United States Supreme Court held that a government employee who gave sworn testimony in a judicial proceeding spoke on a matter of public concern, even though he learned of the subject matter of his testimony through his governmental employment.[41]  The Court found that the Eleventh Circuit construed the 2006 ruling in Garcetti v. Ceballos too narrowly and that courts addressing First Amendment retaliation in the future should not confuse the scope of an employee's duties with public speech which merely "concerns" those duties.[42]

The instant plaintiff was employed as a police officer for the Town of Ball.  Defendants cite Watts v. City of Jackson, a 2011 decision from the Mississippi's Southern District court, as authority for the conclusion that Plaintiff's official duties as a police officer included the prevention and detection of crime and cooperation with outside governmental agencies, including the FBI.[43]  Thus, Defendants assert, under Watts, Plaintiff's participation in the FBI investigation against Mayor Hebron and other Town of Ball employees was not protected speech under the First Amendment.

Jurisprudence addressing First Amendment protection afforded to law enforcement officers who participate in external investigations is currently evolving.  As asserted by Plaintiff, the United States Supreme Court's 2014 decision in Lane v. Franks has some bearing on this

---

[40] Connick v. Myers, 461 U.S. 138, 147-48 n. 7 (1983); Charles v. Grief, 522 F.3d 508, 513 n. 17 (5th Cir. 2008); Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir. 2001).
[41] Lane, 134 S.Ct. 2369, 2378-79.
[42] Id. at 2379.
[43] 827 F.Supp. 2d 724 (S.D. Miss. 2011).

issue.  Prior to Lane, the Fifth Circuit jurisprudence addressing the issue of whether or not various public employees engaged in public speech and, therefore, were afforded First Amendment protection, focused on whether or not the speech at issue may be fairly said to be part of the employees "official duties."[44]  The court also cautioned that, while an employee's official job description is relevant, it should not be the sole source from which a finding of official duty will flow.[45]  Similarly, the court considered factors, such as whether or not the speech was made within the employee's chain of command, and whether the employee gained the knowledge necessary for the speech as a result of his position of public employment.[46]

More recently, the appellate court addressed the issue in Gibson v. Kilpatrick, a 2013 decision which included an exhaustive review of important prior jurisprudence on public employee speech.[47]  In that case, the court found that a chief of police acted pursuant to his official duties when he contacted various state and federal law enforcement agencies to report a mayor's misuse of a city gasoline credit card and, thus, the mayor did not violate the chief's First Amendment rights by reprimanding him and was entitled to qualified immunity on the chief's retaliation claim.  Following the Supreme Court's decision in Lane, writs of certiorari were granted in Gibson and the case was reversed and remanded to the Fifth Circuit for further proceedings consistent with Lane.[48]

On remand, the Fifth Circuit recognized the addition of the consideration of "ordinary job duties" into the Garcetti analysis by the Lane Court.[49]  While not identical to the instant

---

[44] Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 692 (5th Cir. 2007) (internal citations omitted).
[45] Williams v. Riley, 275 F. Appx. 385 (5th Cir. 2008).
[46] Davis v. McKinney, 518 F.3d 304 (5th Cir. 2008).
[47] 734 F.3d 395 (5th Cir. 2013).
[48] 134 S.Ct 2874 (2014).
[49] 773 F.3d 661, 668 citing Lane, 134 S.Ct. at 2378.

case, the Gibson court confronted similar facts to those before this court.  Retracing their analysis in light of Lane, the appellate court again granted qualified immunity to the mayor on the chief of police's retaliation claim, based upon a finding that Lane specifically declined to answer the exact issue before the Gibson court and, unfortunately, before this court today: whether or not a law enforcement officer who reports or participates in an investigation of municipal corruption participates in public speech.

As cited above, whether or not the Plaintiff in this case was engaged in public speech is a question of law which this court is bound to answer.  As can be seen from a reading of the jurisprudence cited above, it is not a question easily answered.

In this case, Plaintiff asserts that he was approached by the FBI and asked to wear a wire as a confidential informant, providing critical evidence in an ongoing fraud investigation.  While Plaintiff did not instigate his communications with the FBI, it is clear to the court that his role as an informant is owed to his employment as a police officer for the Town of Ball.  Plaintiff was, himself, a recipient of fraudulently obtained FEMA funds because of his status as a public employee and it appears that this leverage may have factored into his role as an informant, along with the access to Mayor Hebron and others that his employment certainly provided.[50] As argued by Defendants, Plaintiff has a duty to "prevent and detect crime" which can reasonably be said to include cooperating with the FBI when called upon.[51]  The facts of this case, taken as a whole, demonstrate that, but for Plaintiff's public employment, he would not have been involved in the Town of Ball's fraudulent FEMA claims and, consequently, would not have been involved in the FBI investigation.

---

[50] R. 102-1 at p. 9.
[51] Tezeno v. Maryland Cas. Co., 166 So. 2d 1364 (La. 1984); Istre v. Meche, 916 So.2d 307 (La. App. 3 Cir. 2005).

13

Accordingly, the court finds that, based upon the application of the jurisprudence to the facts of this particular case, Plaintiff was not engaged in public speech as a matter of law when he acted as a confidential informant for the FBI in its investigation of FEMA fraud by Town of Ball officials.

The third required element of Plaintiff's prima facie case concerns whether or not his interest in the protected speech outweighed his employer's legitimate efficiency interest.[52] Defendants do not assert, nor is there any evidence in the record to suggest that Plaintiff's cooperation with the FBI investigation was, in itself, disruptive to the efficient provision of services by the Ball Police Department.[53] While a public employer may have a legitimate interest in efficiency, Defendants do not address this element in their brief and, thus, fall far short of the argument which the court would imagine necessary to overcome the substantial interest that Plaintiff and the public as a whole have in exposing and upending fraudulent government claims.

We find that Plaintiff has demonstrated significant evidence regarding causation, the fourth element of his prima facie case.  We will not rehearse our findings here, having fully discussed them in conjunction with Plaintiff's claim under 31 U.S.C. 3730(h).

Given these findings, we conclude that Plaintiff fails to meet his prima facie burden of proof as to his First Amendment retaliation claim.  Though we need not continue our analysis, we do so out of an abundance of caution, recognizing the importance of these evolving jurisprudential issues.

---

[52] <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968).
[53] <u>Kinney v. Weaver</u>, 367 F.3d 337, 364 (5th Cir. 2004) citing <u>Kennedy v. Tangipahoa Parish Library Bd. of Control</u>, 224 F.3d 359, 378 n. 19 (5th Cir. 2000), inter alia.

*Town of Ball*

Municipal liability for a violation of constitutional rights under § 1983 may not be imposed on the basis of respondeat superior.[54]  Rather, a governmental entity, such as the Town of Ball, must be shown to have caused the constitutional violation by way of some policy, practice or custom which is shown to cause the harm at issue.[55]  As cited by Plaintiff, there are several ways in which he may meet the "official policy" requirement, as instructed by the Fifth Circuit in Burge v. Parish of St. Tammany.[56]  From among these methods, Plaintiff asserts that the case at bar proceeds as one where no official policy was adopted, but the policymaker took an action which violated a constitutional right.[57]  Jurisprudence cited in Burge and the cases cited therein, establish the rule that, even a single decision by a policymaker can constitute a basis for First Amendment liability under §1983, even when the course of action taken by the policymaker is not intended to be repeated in future proceedings and applies only to the circumstances before the policymaker at that instant.

Plaintiff alleges that, in keeping with the Lawrason Act (La. R.S. 33:321, et seq.), Board of Aldermen were the policymakers for the Town of Ball and that their decision to adopt Chief Caldwell's recommendation without further investigation constituted a violation of his First Amendment rights.  Given the court's findings above with respect to the elements of Plaintiff's First Amendment retaliation claim, we find that summary judgment in favor of the Town of Ball

---

[54] Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 691-94 (1978); Flores v. Cameron County, Tex., 92 F.3d 258, 263 (5th Cir. 1996).
[55] Monell, 436  U.S. at 691-94; Flores, 92 F.3d at 263.
[56] 187 F.3d 452 (5th Cir. 1999).
[57] Id. at 471 citing Bryan Cty. Comm'rs. v. Brown, 520 U.S. 397 (1997).

as to this claim is appropriate, but note that, were Plaintiff's prima facie case successful, qualified immunity would be unavailable to the Town of Ball on such claim.[58]

### Aldermen Defendants in their Individual Capacities

By virtue of prior rulings, Plaintiff's First Amendment retaliation claims remain against the Aldermen Defendants in their individual capacities only.  In consideration of our findings above, we look now at the applicability of qualified immunity to these Defendants given the hypothetical sufficiency of Plaintiff's prima facie case of First Amendment retaliation.

Qualified or "good faith" immunity is an affirmative defense which must be pled by a defendant seeking its protection.[59]  Qualified immunity generally protects government officials performing discretionary functions from civil liability insofar as their conduct does not violate any clearly established statutory or constitutional right "of which a reasonable person would have known."[60]  In order to overcome the presumption of good faith attributed to the Defendants asserting the defense of qualified immunity, Plaintiff must show: (1) that Defendants violated a constitutional right; and (2) that the right was clearly established at the time of the alleged violation.[61]  The court's purpose, in this motion, is to discern what the status of the law was with respect to Plaintiff's First Amendment rights as a public employee at the time of the events giving rise to this case.[62]

---

[58] Leatherman v. Tarrant Cty. Narcotics Intell. & Coordination Unit, 507 U.S. 163 (1993); Owen v. Independence, 445 U.S. 622 (1980).
[59] Harlow v. Fitzgerald, 457 U.S. 800 (1982).
[60] Pearson v. Callahan, 555 U.S. 223, 231 (2009); Id. at 817-18.
[61] Kostic v. Texas A&M Univ. at Commerce, 11 F.Supp.3d 699, 714 (5th Cir. 2014) citing Ashcroft v. al-Kidd, 131 S.Ct. 2074 (2011), inter alia.
[62] Anderson v. Creighton, 438 U.S. 635, 638-39 (1987) (internal citations omitted); Charles v. Grief, 522 F.3d 508, 511 (5th Cir. 2008).

As we have discussed above, we find that Plaintiff has demonstrated that he was subjected to an adverse employment action in that he was terminated, but find that the evidence before the court, when coupled with relevant jurisprudence – especially that addressing the particular issue of whether or not a police officer who cooperates with an outside agency's investigation of corruption within his ranks – leads to the conclusion that Plaintiff was not engaged in public speech in this case.  As expressed above, however, the jurisprudence addressing this issue is murky at best and the Supreme Court's decision in Lane plainly leaves the issue open, as recognized by the Fifth Circuit in Gibson.[63]  Were this court to have found that Plaintiff demonstrated that he was engaged in public speech protected by the First Amendment, we would grant qualified immunity to the Aldermen Defendants in their individual capacities on these claims because Plaintiff fails to show that his First Amendment right to such public speech was clearly established as of June 2011 under applicable jurisprudence.

### Mayor Toney

As referenced earlier, the Town of Ball is a Lawrason Act municipality, governed by La. R.S. 33:321, et seq.  As a Lawrason Act municipality, the chief of police must recommend a police department employee for termination to the board of aldermen.  In the event of a tie vote of the aldermen, the mayor's vote would serve as the tie-breaking vote.[64]

It is undisputed that the aldermen Defendants in this case voted unanimously to terminate Plaintiff's employment.  Accordingly, Mayor Toney did not cast a vote for or against his termination.  Thus, even if the court were to have found that Plaintiff successfully carried his

---

[63] Gibson, 773 F.3d 661, 670 (5th Cir. 2014) quoting Lane, 134 U.S. at 2378 n. 4.
[64] La. R.S. 33:404.

prima facie burden as to his First Amendment retaliation claim, we would still find summary judgment in Mayor Toney's favor appropriate based on Plaintiff's failure to allege facts which, if proven at trial, would sustain a verdict in Plaintiff's favor as to such claim.

### Mayor Hebron

Mayor Hebron resigned the office of mayor on or about February 5, 2011.[65]  Thus, he was no longer a state actor at the time of Plaintiff's termination on June 1, 2011.  Assuming Plaintiff had successfully demonstrated the prima facie elements of his First Amendment retaliation claim, summary judgment would still be appropriate as to Mayor Hebron because Plaintiff alleges no facts which would support a judgment in his favor for a First Amendment violation under 42 U.S.C. § 1983.[66]

### Fourteenth Amendment Due Process

Plaintiff's second set of claims under § 1983 assert violations of his substantive due process rights under the Fourteenth Amendment.  Plaintiff alleges that, by voting to accept Chief Caldwell's recommendation to terminate his employment without first conducting their own independent investigation of the matter, Defendants deprived him of his right to due process under the Fourteenth Amendment.  Defendants' brief suggests that Plaintiff also bases this claim on La. R.S. 40:2531, the Officer's Bill of Rights,.[67]

In order to demonstrate a violation of his Fourteenth Amendment due process rights, Plaintiff must show that he possessed a property interest or right in his employment and that

---

[65] R. 104-1 at p. 3.
[66] 42 U.S.C. § 1983; Monroe v. Pape, 365 U.S. 167 (1961); Johnson v. Dallas I.S.D., 38 F.3d 198, 200 (5th Cir. 1994).
[67] R. 102-1 at p. 18.

the act of termination by his employer was arbitrary or capricious.[68]  Plaintiff fails to establish that his termination deprived him of a constitutionally-protected property right since, pursuant to Louisiana law, Plaintiff possessed no such right, absent a specific contract creating such interest.[69]  Plaintiff shows no such contract, nor does he allege the existence of any such property right.

Rather, it appears that what Plaintiff actually asserts is that he was deprived of a liberty interest without due process because of the stigmatizing manner in which he was terminated. A public employee may be deprived of a liberty interest if he was terminated for a reason that was (1) false, (2) publicized, and (3) stigmatizing to his standing or reputation in his community or if terminated for a reason that was (1) false and (2) had a stigmatizing effect such that (3) he was denied other employment opportunities as a result. [70]

Plaintiff's claims clearly fail under these criteria, as well.  Plaintiff does not dispute that he was insubordinate toward Chief Caldwell, though we do note that the investigation which was the "spark" of the debate among them was fabricated by Caldwell.  Plaintiff offers no evidence of the publication of the reason for his termination outside of the Board of Aldermen or that he suffered a stigmatizing effect upon his reputation or any impairment to his ability to become employed thereafter.  Moreover, the court notes that Plaintiff vigorously asserts that his participation in the FBI investigation was known among many in his community, which would lead to the need to differentiate among what stigma, if any was experienced, was

---

[68] Moulton v. Cty. Of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993).
[69] Board of Regents of State Colleges v. Roth, 408, U.S. 564, 577 (1972), Cabrol v. Town of Youngsville, 106 F.3d 101 (5th Cir. 1997).
[70] Board of Regents, 408 U.S. at 564.

attributable to his role in that investigation, rather than his termination from employment for insubordination.  Again, Plaintiff fails to address these factors.

We find that, on the basis of the evidence before the court, summary judgment is appropriate as to all Fourteenth Amendment claims by Plaintiff now remaining against all Defendants.

### *Mayor Hebron*

As noted with respect to Plaintiff's First Amendment § 1983 claim, Plaintiff's claim against Mayor Hebron fails on the basis that he was not a state actor at the time of the events alleged.  Thus, even if the court were to find that Plaintiff met his prima facie burden with respect to his Fourteenth Amendment claim, we would still dismiss such claim against Mayor Hebron as Plaintiff could prove no set of facts which would entitle him to relief against this defendant on such claim.[71]

### Conspiracy Claims

Defendants' motion next asserts that Plaintiff's allegations of conspiracy among them to violate his constitutional rights fall far short of the fact-specific pleading required for such claims and, therefore, should be dismissed.  Given our findings with respect to the underlying §1983 claims as to both the First and Fourteenth Amendment violations above, the court finds that Plaintiff's conspiracy claims also fail as a matter of law.[72]  We also note that, even if we had found surviving claims under § 1983, the result would be the same as to Plaintiff's conspiracy claims.  Plaintiff's complaint is conclusory and without sufficient facts to meet the prima facie burden as argued by Defendants and, additionally, Plaintiff's opposition brief fails to respond to

---

[71] 42 U.S.C. § 1983; <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1002 (1981); <u>Johnson</u>, 38 F.3d at 200.

[72] <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995); <u>Arsenaux, v. Roberts</u>, 726 F.2d 1022, 1024 (5th Cir. 1982).

Defendants' challenges regarding the sufficiency of specific facts alleged, leading the court to conclude that these claims may be, in fact, abandoned.

Defendants' motion will be granted as to all claims of conspiracy.

**Claims for Intentional Infliction of Emotional Distress**

Defendants' motion asserts that Plaintiff's Louisiana law claims for intentional infliction of emotional distress against them fail as a matter of law because the conduct alleged by Plaintiff fails to rise to the level required under applicable jurisprudence.  In order to maintain a cause of action for intentional infliction of emotional distress under Louisiana law, Plaintiff must show that:

(1) The conduct of the Defendants was extreme and outrageous;
(2) The emotional distress suffered was severe; and
(3) The Defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.[73]

Recovery under this theory is restricted to those cases in which the behavior of the defendant is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[74]

Additionally, while Louisiana does recognize the availability of IIED theory claims in the context of workplace cases, Louisiana courts generally limit recovery to cases involving a pattern of deliberate, repeated harassment over an extended period of time.[75]

---

[73] White v. Monsanto, 585 So.2d 1205 (La. 1991).
[74] Id. at 1209.
[75] Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1026 citing White, 585 So.2d at 1210.

While the court does not find that the facts alleged by Plaintiff, even when taken as true for the purpose of this motion, rise to the level required for recovery under Louisiana's IIED theory, we also note that, again, Plaintiff fails to address these claims in his memorandum in opposition, perhaps abandoning them.

Summary judgment will be granted as to these claims.

**Prevailing party under § 1988**

As asserted by Defendants, 42 U.S.C. § 1988 allows this court to award a reasonable attorney's fee to a prevailing party upon a finding that such party was subject to a suit which was frivolous, unreasonable or without foundation.[76]

The court's review of this matter has been exhaustive and, though this ruling concludes with a number of Plaintiff's claims being dismissed, we would strongly disagree with any characterization of Plaintiff's suit as frivolous or lacking foundation.  To the contrary, the evidence provides ample proof that this case is far from frivolous.  Moreover, at least one claim survives against the Town of Ball by this ruling, refuting any claim by Defendants to the tile of "prevailing party."

By this ruling, we also deny Chief Caldwell's motion for attorney fees [R. 128] and the motion for attorney fees included within Mayor Hebron's motion for summary judgment [R. 104], noting that any legal fees owed by the defendants are likely not outrageous given that defendants emerged unscathed from these proceedings.

Having concluding our findings, the court will issue a judgment in conformity with this memorandum ruling.

---

[76] Christiansburg Garmet Co. v. EEOC, 434 U.S. 412, 421 (1978).

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 3rd day of March, 2015.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE