UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS R. HOWELL, Plaintiff | CIVIL ACTION NO. 1:12-CV-00951 |
| VERSUS | |
| TOWN OF BALL, ET AL. Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is an Oral Motion in Limine (Doc. No. 196) asserted by Defendants. Plaintiff Thomas R. Howell ("Howell") opposes the motion. For the reasons detailed below, Defendants' Motion will be granted in part and denied in part.

I. <u>Background</u>

Defendants seek a ruling that two disputed points of fact may be raised at trial because they were not definitively resolved by a July 1, 2016 ruling of the United States Court of Appeals for the Fifth Circuit. <u>See</u> <u>Howell v. Town of Ball</u>, 827 F.3d 515, 520 (5th Cir.2016), cert. denied sub nom. <u>Town of Ball, La. v. Howell</u>, 137 S.Ct. 815, 196 L.Ed.2d 600 (2017). The points of fact are listed in the parties' Pretrial Stipulations as follows: (1) "Whether cooperating with outside agencies, such as the FBI, was part of plaintiff's ordinary job duties"; and (2) "Whether plaintiff was speaking as a private citizen or pursuant to his ordinary job duties as a public employee when he cooperated with the FBI" (hereinafter, for ease of reference, the "disputed issues").

Defendant maintains the disputed issues were not resolved by the Fifth Circuit, as no cross-motion for summary judgment was pending. According to Defendants, the disputed issues therefore remain triable. Howell argues the Fifth Circuit ruled upon the disputed issues, foreclosing further litigation under the "law of the case" doctrine.

II.    <u>Law and Analysis</u>

"'The law of the case doctrine . . . generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal.'" <u>Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.</u>, 272 F.3d 276, 279 (5th Cir. 2001) (quoting <u>Todd Shipyards Corp. v. Auto Transp.</u>, 763 F.2d 745, 750 (5th Cir.1985). The "mandate rule" – a corollary to the law of the case doctrine – provides that, absent an exception to the law of the case doctrine, a district court may not deviate from issues "expressly or impliedly decided by the appellate court." <u>Fuhrman v. Dretke</u>, 442 F.3d 893, 897 (5th Cir. 2006) (quoting <u>United States v. Lee</u>, 358 F.3d 315, 321 (5th Cir. 2004)); <u>Whitaker v. Collier</u>, 862 F.3d 490, 506 (5th Cir. 2017) ("A district court on remand 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'"). "Exceptions to the law of the case doctrine allow reexamination only if '(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and

would work a manifest injustice.'" Fuhrman, 442 F.3d at 897 (quoting United States v. Becerra, 155 F.3d 740, 752-53 (5th Cir. 1998)).

Although its broad purpose is to bring litigation to an end, "[t]he [law of the case] doctrine's reach does have its limits." Alpha/Omega Ins. Servs., Inc., 272 F.3d at 279. Specifically, "unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." Id. Nonetheless, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" Id. (quoting In re Felt, 255 F.3d 220, 225 (5th Cir. 2001). This means that "even when issues have not been expressly addressed in a prior decision, if those matters were 'fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.'" Alpha/Omega Ins. Servs., Inc., 272 F.3d at 279 (quoting In re Felt, 255 F.3d at 225).

In this case, the District Judge granted Defendants' Motion for Summary Judgment as to Howell's First Amendment retaliation claims. Howell did not file a cross-motion for summary judgment; he simply opposed Defendants' motion. In his opposition, Howell requested that Defendants' motion be denied – not that the District Judge decide the issue in his favor. (Doc. 113, p. 22).

The District Judge reasoned as follows:

In this case, Plaintiff asserts that he was approached by the FBI and asked to wear a wire as a confidential informant, providing critical

> evidence in an ongoing fraud investigation. While Plaintiff did not instigate his communications with the FBI, it is clear to the court that his role as an informant is owed to his employment as a police officer for the Town of Ball. Plaintiff was, himself, a recipient of fraudulently obtained FEMA funds because of his status as a public employee and it appears that this leverage may have factored into his role as an informant, along with the access to Mayor Hebron and others that his employment certainly provided. As argued by Defendants, Plaintiff has a duty to "prevent and detect crime" which can reasonably be said to include cooperating with the FBI when called upon. The facts of this case, taken as a whole, demonstrate that, but for Plaintiff's public employment, he would not have been involved in the Town of Ball's fraudulent FEMA claims and, consequently, would not have been involved in the FBI investigation.
>
> Accordingly, the court finds that, based upon the application of the jurisprudence to the facts of this particular case, Plaintiff was not engaged in public speech as a matter of law when he acted as a confidential informant for the FBI in its investigation of FEMA fraud by Town of Ball officials.

(Doc. 149, pp. 13-14). Based upon this finding, and noting that governing jurisprudence on this issue was "evolving," the District Judge concluded that Howell's First Amendment retaliation claims against all defendants should be dismissed. The District Judge further concluded that Howell's First Amendment retaliation claims against the individual Defendants should nevertheless be dismissed, because the individual Defendants were entitled to qualified immunity.

The Fifth Circuit reversed, noting that the central issue was "whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." Howell, 827 F.3d at 523. The Court cited and discussed Gibson v. Kilpatrick, 773 F.3d 661 (5th Cir. 2014), a decision applying qualified immunity and dismissing a fired police officer's claims for retaliation after he "reported municipal

corruption to outside law enforcement agencies . . . . because the plaintiff failed to offer evidence clarifying whether he made the reports as a private citizen instead of in furtherance of his ordinary duties as police chief." Id. at 523.

Applying this case and others, the Fifth Circuit analyzed the record as follows:

> Howell has offered evidence that his involvement in the FBI investigation was outside the ordinary scope his professional duties. . . . Howell's statements to the FBI were made outside the normal chain of command and without the knowledge or permission of anyone else in the police department. . . . Indeed, the confidential nature of Howell's speech alone suggests that it was not part of his "ordinary" professional duties; the FBI did not ask for any assistance from the Ball Police Department, and Howell was forbidden from telling anyone at the department that he was aiding the FBI by recording town officials' conversations, since doing so would have compromised the investigation.
>
> In an attempt to downplay the unusual circumstances surrounding Howell's cooperation with the FBI, the defendants point only to the judicially established definition of a Louisiana police officer's duties. See Smith on Behalf of Smith v. City of Kenner, 428 So.2d 1171, 1174 (La. App. 5 Cir. 1983) (stating that a police officer is responsible for "maintaining peace and order, preventing and detecting crime, and enforcing the law" (internal quotation marks omitted)). The defendants contend that, embedded within the general duty to "detect and prevent crime," is the specific obligation to cooperate with outside law enforcement agencies regarding investigations into public corruption. That may or may not be plausible as a generality. But such general, implicit assumptions *are not dispositive* regarding the scope of a public employee's "ordinary" job duties, *because such broad assumptions fail to describe with sufficient detail the day-to-day duties of a public employee's job. Accordingly, we decline to infer solely from a Louisiana law enforcement officer's non-specific duty to "detect and prevent crime" that Howell, as a local police officer, had an ordinary duty to participate secretly in an FBI investigation of coworkers' and superiors' illegal conduct.*
>
> In sum, Howell asserts that it was never part of his normal job duties, secretly and without departmental authorization, to aid in an FBI investigation of coworkers and superiors, much less to record surreptitiously coworkers' conversations at the FBI's request. The defendants offer no evidence to the contrary, other than the all-

encompassing, judicially established general description of a police officer's professional responsibilities in the state of Louisiana, which, as we have stated, cannot be considered dispositive. Accordingly, *the district court erred in finding that Howell's involvement in the FBI investigation was in furtherance of his ordinary job duties, and thus was not entitled to First Amendment protection.*

Id. at 523–24 (emphasis added).

After addressing the claims of the individual Defendants, and the unavailability of qualified immunity to the Town of Ball, the Fifth Circuit summarized its ruling as follows:

> In sum, we conclude that the district court erred in dismissing Howell's constitutional claim against the town of Ball. *We hold that, on the record before us, Howell has shown that his involvement in the FBI investigation was not within the ordinary perimeters of his job duties, and thus that his involvement in the FBI investigation was a protected First Amendment right.* We have further held, however, that the district court's error does not lead to relief for Howell against the individual defendants. This is true because Howell's First Amendment claim was not "clearly established" at the time of his discharge. Thus, the individual defendants are entitled to qualified immunity, and the district court properly dismissed Howell's claim against each of them.
>
> Howell's First Amendment claim against the town of Ball, however, presents a different standard of review because qualified immunity is not available to a municipality. *Accordingly, we hold that Howell has offered evidence creating a genuine dispute of material fact regarding whether the town of Ball, acting through its official policy maker, the Board of Aldermen, is liable for the discharge of Howell in retaliation for his involvement in the FBI investigation, either through its own motivation or through ratification of Police Chief Caldwell's motive.* The culpability of the Board is now a question for the appropriate fact finder, and we remand the First Amendment retaliation claim against the town of Ball for proceedings not inconsistent with this opinion.

Id. at 528–29.

Howell argues that the Fifth Circuit decided – in definitive and binding fashion – the propositions contrary to Defendants' positions in the motion for summary

judgment: that in cooperating with the FBI, Howell was not performing his ordinary job duties and was instead speaking as a private citizen outside his ordinary job duties.

To Howell's point, several statements in the opinion seem to emphatically favor Howell's position:

- "We find that the district court erred in holding that Howell's involvement in the FBI investigation was not entitled to First Amendment protection. . . . [W]e hold that Howell asserts a violation of his right of free speech . . . ."
- "[T]he district court erred in finding that Howell's involvement in the FBI investigation was in furtherance of his ordinary job duties, and thus was not entitled to First Amendment protection."
- "Howell has shown that his involvement in the FBI investigation was not within the ordinary perimeters of his job duties, and thus that his involvement in the FBI investigation was a protected First Amendment right."

The Fifth Circuit's ruling also seems to indicate that the remaining issue for trial may be limited only to the question of the Board's motivation in terminating Howell:

- "Our review of the evidence demonstrates a genuine dispute of fact regarding whether Howell's protected activity was a motivating factor in the Board's decision to adopt Caldwell's recommendation."
- "[W]e hold that Howell has offered evidence creating a genuine dispute of material fact regarding *whether the town of Ball, acting through its official policy maker, the Board of Aldermen, is liable for the discharge of Howell in*

*retaliation for his involvement in the FBI investigation*, either through its own motivation or through ratification of Police Chief Caldwell's motive. The culpability of the Board is now a question for the appropriate fact finder, and we remand the First Amendment retaliation claim against the town of Ball for proceedings not inconsistent with this opinion."

However, the Court's decision simply did not declare summary judgment in Howell's favor on the disputed issues. Rather, the Court clarified that its decision was premised upon "the record before" it. Because the District Judge's finding foreclosed further consideration of the claims, the Fifth Circuit reasonably reached that conclusion for purposes of its remaining analysis. It is true that the decision repeatedly indicates a view – and a "holding" based upon the available record – that Howell's cooperation with the FBI was entitled to First Amendment protection. But rather than specifically granting summary judgment to Howell, the court decided to "vacate the district court's summary judgment for the town of Ball and remand for proceedings not inconsistent with this opinion." Howell, 827 F.3d at 528. Howell's argument that the Fifth Circuit effectively granted summary judgment in his favor is simply absent from the opinion.

Defendants maintain that the Fifth Circuit *could not have* granted summary judgment in Howell's favor absent a cross-motion for summary judgment. That is also incorrect. It is well-settled that "[a] district court may grant summary judgment, *sua sponte*." C & W Asset Acquisition LLC v. Knox, 104 Fed.Appx. 936, 938 (5th Cir.

2004) (quoting Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 595 (5th Cir. 2000).

But critically, "[t]he power to enter summary judgment sua sponte is tempered by the requirement to provide prior notice." Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1397 (5th Cir.1994). Specifically, the court should "provide adequate notice and an opportunity to respond akin to that [formerly] required by FED. R. CIV. P. 56(c)." Knox, 104 Fed.Appx. at 938. One of the central purposes of this requirement is to ensure that the non-movant has the opportunity to present all evidence, and all factual and legal arguments, to raise a genuine issue of material fact or otherwise rebut a contrary summary judgment. See Trustmark Ins. Co. v. Kehler, CIV.A. 05-0515, 2005 WL 2170701, at *5 (W.D. La. Sept. 6, 2005), aff'd, 198 Fed.Appx. 410 (5th Cir. 2006); see also Powell v. United States, 849 F.2d 1576, 1579 (5th Cir 1988) ("Since a summary judgment forecloses any future litigation of a case the district court must give proper notice to insure that the nonmoving party had the opportunity to make every possible factual and legal argument."). The Fifth Circuit has applied this requirement even where the "non-movant" is the party that originally filed a motion for summary judgment. See Knox, 104 Fed.Appx. at 938.

In this case, neither the District Judge nor the Fifth Circuit indicated that Howell's opposition to Defendants' motion for summary judgment had been converted into a cross-motion for summary judgment. Consideration of such a "converted cross-motion" – even if the District Judge could be said to have implicitly denied it – was

therefore simply not before the Fifth Circuit as part of Howell's appeal. And the Fifth Circuit did not make a sua sponte declaration indicating otherwise.

Further, neither the District Judge nor the Fifth Circuit indicated that adequate notice for such a conversion had been provided. Defendants were certainly aware that the District Judge and the Fifth Circuit were considering the disputed issues. But Defendants requested summary judgment *in their favor* on the disputed issues. Defendants were not on notice – before either court – that they may be facing what would effectively be a ruling granting a cross-motion for summary judgment declared sua sponte. Howell never requested that relief, and neither court specified it was following that procedural avenue.

To be clear, Defendants likely would have presented all arguments and evidence available in support of their own motion for summary judgment. The Court could reasonably assume that Defendants have no additional evidence or arguments. But that assumption is not dispositive. The Fifth Circuit's notice requirement applies under these circumstances, as explained above. It is possible, though unlikely, that Defendants may have offered different or supplementary arguments or evidence to counter a cross-motion for summary judgment. It is further possible, and less unlikely, that Defendants may offer different arguments and evidence at trial. In either event, neither party specifically briefed or argued the merits of a summary judgment motion in Howell's favor. Nor can the Court be certain that they "fully briefed" the matter of summary judgment for either party, and that additional discovery, evidence, or argument would have changed the record.

Finally, the Fifth Circuit also did not indicate that its "holding" was, in fact, a summary judgment in Howell's favor, or that the District Judge erred in *not* granting summary judgment in Howell's favor.  Rather, the Fifth Circuit specified that its decision was premised upon "the record before" it at that time.  And the Fifth Circuit ruled that the District Judge erred in granting summary judgment in *Defendants'* favor.  Howell, 827 F.3d at 528.

For these reasons, in the Court's view, additional litigation regarding the disputed issues is not "inconsistent" with the Fifth Circuit's ruling.  However, the Court has carefully considered the possibility that its reading of the Fifth Circuit's decision is incorrect, and that the Fifth Circuit intended to foreclose further litigation of the disputed issues.  Given some of the statements in the Fifth Circuit's opinion, which do indicate a "holding" in Howell's favor, that possibility is distinct.[1]  Even if true, based upon the Fifth Circuit's prior decisions, the Court can only conclude that the Fifth Circuit would have erred in so ruling.  Such an error would be an exception to the law of the case doctrine, allowing additional litigation of the disputed issues. Fuhrman, 442 F.3d at 897 (quoting United States v. Becerra, 155 F.3d 740, 752-53 (5th Cir. 1998)).  This Court's ruling would therefore be the same.

### III.  Conclusion

Because Howell's opposition to Defendants' motion for summary judgment was not treated as a cross-motion for summary judgment, and because the Fifth Circuit thus did not "actually decide" the disputed issues in Howell's favor, the law of the

---

[1] Once again, the Court views this "holding" as a conditional one based only upon the record before the Fifth Circuit, intended only to provide a basis for the Fifth Circuit's remaining analysis.

case doctrine does not bar litigation of those issues at the upcoming trial. Defendants' Oral Motion in Limine is therefore GRANTED IN PART.

Critically, however, the "letter and spirit" of the Fifth Circuit's decision – both of which this Court is obliged to follow – do have other relevant implications. The Fifth Circuit "held" that, "on the record before" it at the time of its decision, "Howell has shown that his involvement in the FBI investigation was not within the ordinary perimeters of his job duties, and thus that his involvement in the FBI investigation was a protected First Amendment right." Howell, 827 F.3d at 528–29. Absent some modification to, or supplementation of, that record, this Court may be bound by the Fifth Circuit's holding as to the disputed issues. See Knox, 104 Fed.Appx. at 939 ("The failure to provide notice is harmless error 'when the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact.'") (quoting Love v. Nat'l Med. Enters., 230 F.3d 765, 771, reh'g en banc denied, 239 F.3d 367 (5th Cir. 2000)). Therefore, Defendants' Oral Motion in Limine is DENIED IN PART to the extent it seeks license to present the same record that was before the Fifth Circuit to the jury at trial. No less than seven days before trial, Defendants will file a written notice indicating whether Defendants have additional arguments or evidence not presented to the Fifth Circuit, and detailing any additional evidence or arguments to be presented. The Court will revisit this ruling at that time.

Finally, the current deadline to submit proposed jury instructions is August 21, 2017. Because this decision will necessarily impact the proposed jury

instructions, the submission deadline is hereby EXTENDED to August 24, 2017. For the time being, proposed jury instructions should address the disputed issues.

THUS DONE AND SIGNED in Alexandria, Louisiana, this  16th  day of August, 2016.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE