UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS R. HOWELL, Plaintiff | CIVIL ACTION NO. 1:12-CV-00951 |
| VERSUS | CHIEF JUDGE DRELL |
| TOWN OF BALL, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

MEMORANDUM RULING AND ORDER

Under Fed. R. Civ. P. 56(f), and given the unique circumstances present in this case, sua sponte resolution of a specific issue is appropriate. The issue is whether Plaintiff Thomas R. Howell ("Howell"), in cooperating with the FBI investigation into FEMA fraud in the Town of Ball (the "Town"), engaged in speech that fell within the scope of his "ordinary" job duties. Howell v. Town of Ball, et al., 827 F.3d 515, 528-529 (5th Cir. 2016), cert. denied sub nom. Town of Ball, La. v. Howell, 137 S.Ct. 815, 196 L.Ed.2d 600 (2017); see also Doc. 201. For the following reasons, the Court finds there is no genuine issue of material fact that Howell was speaking as a private citizen on a matter of public concern when he cooperated with the FBI, as this speech was not part of his ordinary job duties as a police officer with the Town. Partial summary judgment is therefore warranted.

I.   Background

Howell brought this action against the Town and its former Mayors Roy Hebron and Roger Toney, its former Police Chief Daniel Caldwell, and the individual members of its Board of Aldermen (collectively, "Defendants"). Howell

alleges Defendants violated his First Amendment rights by firing him for cooperating with an FBI investigation of public corruption. He also asserted claims under the False Claims Act ("FCA") for being fired in violation of the FCA's whistleblower protections.

This Court, through Motions for Summary Judgment and Rule 12(b)(6) motions, dismissed Howell's First Amendment retaliation claim against all Defendants. The Court also dismissed Howell's FCA claims against all individual Defendants. The District Judge further concluded that Howell's First Amendment retaliation claims against the individual Defendants should be dismissed, because the individual Defendants were entitled to qualified immunity. The Court denied Summary Judgment as to Howell's FCA claim against the Town. Howell did not file a cross-motion for summary judgment; he simply opposed Defendants' motion. (Doc. 113, p. 22). The District Judge did not, sua sponte, characterize Howell's opposition as a cross-motion for summary judgment.

On appeal, the Fifth Circuit affirmed the District Court's dismissal of the individual Defendants based on qualified immunity. Id. The Fifth Circuit also affirmed the Court's dismissal of Howell's claims under the FCA against the individual Defendants. Id. The Town is the only remaining Defendant, and First Amendment retaliation and FCA retaliation are Howell's only remaining claims.

Regarding Howell's First Amendment retaliation claim, the Fifth Circuit noted that the central issue was "whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in

2

furtherance of the duties of his or her public employment." Id. at 528-29; see also Doc. 201. The Fifth Circuit held the District Judge erred in finding that Howell's cooperation with the FBI investigation was part of his ordinary job duties. Id. at 523-24. The Fifth Circuit "held" that, "on the record before" it at the time of its decision, "Howell [had] shown that his involvement in the FBI investigation was not within the ordinary perimeters of his job duties, and thus that his involvement in the FBI investigation was a protected First Amendment right." Id. at 528-29.

The Fifth Circuit did not indicate that its "holding" was, in fact, a summary judgment in Howell's favor, or that the District Judge erred in not granting summary judgment in Howell's favor. Rather, the Fifth Circuit specified that its decision was premised upon "the record before" it at that time, ruling that the District Judge erred in granting summary judgment in the Town's favor. Id. at 528.

In its prior decisions, the Fifth Circuit has reached competing conclusions regarding whether the inquiry into the nature of a public employee's speech is an issue of fact which should be presented to a jury. However, in its decision in this case, the Fifth Circuit plainly implied the issue should be resolved before trial if it was still disputed, and even more plainly implied that the only remaining question for the jury should likely be the Town's motivation for terminating Howell. Further, in Section 10.6 note 3 of the Pattern Jury Instructions, the Fifth Circuit, citing seminal cases like Charles v. Grief, 522 F.3d 508, 513 n. 17 (5th Cir. 2008), explained that this inquiry "should be decided as a matter of law before trial."

3

On August 7, 2017 (Doc. 197), one month before trial, the Court was notified by teleconference that the parties disagreed about whether the Fifth Circuit had effectively declared summary judgment in Howell's favor. The Town suggested additional evidence was available. Howell maintained the issue was barred by the "law of the case" doctrine.

During this teleconference, the Town moved to allow reference to the disputed issue at trial. (Doc. 197). Howell opposed the motion. The Court partially granted the motion, finding the Fifth Circuit did not – and could not have – resolved the issue in Howell's favor. The Court further allowed the Town time to identify additional evidence relevant to the disputed issue. The Court afforded Howell an opportunity to respond. Finally, the Court scheduled a partial summary judgment hearing for the morning of trial.

During the hearing, the parties elicited testimony from four witnesses: FBI Special Agent Randy Deaton ("Agent Deaton"); Former Chief of Police Daniel "Danny" Edward Caldwell ("Caldwell"); Former Chief of Police Jay L. Barber ("Barber"); and Howell. The parties also submitted additional documentary evidence. The Town objected to the Court's resolution of the issue by summary judgment, arguing a motion for judgment as a matter of law under Fed. R. Civ. P. 50 would be more appropriate. Howell did not object to the summary judgment procedure, but rather, to the Town's timing in raising the issue and purportedly new evidence relevant to it. Both parties confirmed they had a full opportunity to

4

submit evidence, and that no additional evidence or argument would have been offered to the jury.

Having received a complete record, and in light of the Fifth Circuit's guidance (in this case and others) that the disputed issue should generally be resolved before trial, the Court took the issue under advisement under Fed.R.Civ.P. 56(f). The Court also observed that resolution of the issue before trial would avoid any risk, however small, of confusing, prejudicing, or wasting the time of the jury.

For reasons stated verbally during the hearing, as well as the reasons stated below, partial summary judgment in Howell's favor is warranted.

## II. Law and Analysis

### A. Standard governing Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[1]

Fed.R.Civ.P. 56(e).

---

[1] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

It is well-settled that "[a] district court may grant summary judgment *sua sponte*." C&W Asset Acquisition LLC v. Knox, 104 Fed.Appx. 936, 938 (5th Cir. 2004) (quoting Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 595 (5th Cir. 2000). Paragraph (f) of Rule 56 allows for summary judgment sua sponte after giving notice and a reasonable time to respond. The court may:

(1) grant summary judgment for a nonmovant;
(2) grant the motion on grounds not raised by a party; or
(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed.R.Civ.P. 56(f).

"The power to enter summary judgment sua sponte is tempered by the requirement to provide prior notice." Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1397 (5th Cir. 1994). One of the central purposes of this requirement is to ensure that the non-movant has the opportunity to present all evidence, and all factual and legal arguments, to raise a

6

genuine issue of material fact or otherwise rebut a contrary summary judgment. See Trustmark Ins. Co. v. Kehler, CIV.A. 05-0515, 2005 WL 2170701, at *5 (W.D. La. Sept. 6, 2005), aff'd, 198 Fed.Appx. 410 (5th Cir. 2006).

### B. Howell was speaking as a private citizen on a matter of public concern when he cooperated with the FBI.

The circuits disagree as to whether the nature of a public employee's speech is purely a question of law. But, in a number of decisions, the Fifth Circuit has agreed with the D.C., Sixth, Tenth, and Eleventh Circuits that this inquiry is a question of law.[2]

"Under Garcetti v. Ceballos, 547 U.S. 421 (2006) and Lane v. Franks, 134 S.Ct. 2369 (2014), the "proper inquiry is a practical one," and focuses solely on whether the speech at issue is *ordinarily* within the scope of the employee's professional duties." Howell, 827 F.3d at 523. Garcetti states that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Garcetti, 547 U.S. at 421.

This Court finds that, while not dispositive of the issue, the Fifth Circuit's ruling was instructive regarding the scope of Howell's "ordinary" job duties. The Fifth Circuit analyzed the record before them, finding that the confidential nature of Howell's speech alone suggests that it was not part of his "ordinary" professional duties. Howell, 827 F.3d at 524. The Fifth Circuit further found the FBI did not

---

[2] See Connick v. Myers, 461 U.S. 138, 148, n. 7 (1983); Wilburn v. Robinson, 480 F.3d 1140, 1149 (D.C. Cir. 207); Charles v. Grief, 522 F.3d 508, 513 n.17 (5th Cir. 2008); Mayhew v. Town of Smyrna, Tennessee, 856 F.3d 456 (6th Cir. 2017); Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202-03 (10th Cir. 2007); Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993), cert. denied, 512 U.S. 1221, 114 S. Ct. 2708, 129 L. Ed. 2d 836 (1994). See also, Salge v. Edna Independent School District, 411 F.3d 178, 184 (5th Cir. 2005).

ask for any assistance from the Ball Police Department, and Howell was forbidden from telling anyone at the department that he was aiding the FBI by recording town officials' conversations, since doing so would have compromised the investigation. Id.

It is certainly true that cooperating (in a traditional sense) with another law enforcement agency's investigation may have fallen with Howell's ordinary duties. But Howell's cooperation with the FBI was, in nearly every respect, different from the assistance he would ordinarily render to another law enforcement agency. Howell technically initiated his cooperation by asking a friend to place him in contact with an FBI agent. As former Police Chief Barber testified, standard protocol would dictate knowledge on Howell's employer's part that he was cooperating. No such protocol was followed. And Howell's cooperation consisted almost entirely of surreptitiously reporting, rather than officially investigating, the FEMA fraud, a distinction discussed more fully below.

Further, on the record before the Fifth Circuit, the Town offered no evidence, other than the "judicially established general description of a police officer's professional responsibilities in the state of Louisiana," that it was part of Howell's "normal job duties, secretly and without departmental authorization, to aid in an FBI investigation of coworkers and superiors, much less to record surreptitiously coworkers' conversations at the FBI's request." Howell, 827 F.3d at 524. Citing Garcetti, the Fifth Circuit noted that the court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether

8

the speech was made in furtherance of a public employee's official duties, regardless of whether that speech addresses a matter of public concern. Id. at 522.

Noting the Town's attempts to downplay the unusual circumstances surrounding Howell's cooperation with the FBI, the Fifth Circuit stated that the Town pointed only to the judicially established definitions of a Louisiana police officer's duties. Id. at 524 (citing Smith on Behalf of Smith v. City of Kenner, 428 So.2d 1171, 1174 (La. App. 5 Cir. 1953) (stating that a police officer is responsible for maintaining peace and order, preventing and detecting crime, and enforcing the law)). The Fifth Circuit declined to infer from a Louisiana law enforcement officer's general duty to "detect and prevent crime" that Howell, as a local police officer, had an ordinary duty to participate secretly in an FBI investigation of coworkers' and superiors' illegal conduct. Id. at 524 (stating that defendant's assumptions that such general duties include an obligation to cooperate with outside law enforcement agencies "fail to describe with sufficient detail the day-to-day duties of a public employee's job"). The supplemented record now before this Court remains deficient in this respect. The Town has shown that Howell likely had a duty to "report" – as well as "detect and prevent" – crime. For the same reasons articulated by the Fifth Circuit, that general duty is not decisive.

The Fifth Circuit analyzed whether Howell was speaking as a public employee or private citizen, as follows:

> Furthermore, since Howell's discharge, the Fifth Circuit has applied Garcetti's distinction in a case where a police officer alleged that he was fired in retaliation for reporting municipal corruption to outside law enforcement agencies. See Gibson v. Kilpatrick, 773 F.3d 661 (5th

9

> Cir. 2014). In Gibson, this court considered whether the plaintiff, a local police chief, acted pursuant to his official job duties when he reported to outside law enforcement agencies that the mayor had misused a city gasoline card. The Gibson court recognized that, in some circumstances, reporting municipal crimes to an outside law enforcement agency may be outside a police officer's "ordinary" duties, thus entitling it to First Amendment protection under Lane. See id. at 670, 672. The Gibson court, however, ultimately held that the defendants were entitled to qualified immunity because the plaintiff failed to offer evidence clarifying whether he made the reports as a private citizen instead of in furtherance of his ordinary duties as police chief. See id. at 672.

Howell, 827 F.3d at 523.

The Court agrees that, in some circumstances, there is a distinction between reporting a crime and investigating a crime for purposes of a retaliation claim. This case presents such circumstances. There is no dispute Howell was involved in reporting the FEMA fraud to the FBI. But he was not "investigating" as a police officer for the Town when he cooperated with the FBI. Rather, as a private citizen and confidential informant, Howell was reporting, and providing evidence of, FEMA fraud. The full record before the Court, unlike that in Gibson, evidences Howell's involvement in the FBI investigation was outside the ordinary scope of his professional duties. See also Davis v. McKinney, 518 F.3d 304, 317 (5th Cir. 2008) (holding that statements to "external, unrelated entities" were protected where it was "not within [employee's] job function to communicate with outside police authorities" and such communications had not happened in the past).

Further, Barber testified that proper protocol, including permission from your agency, must be followed to "ordinarily" assist outside law enforcement agencies. He testified that a police officer of the Town was an officer of limited

10

jurisdiction. According to Barber, if an investigation is part of a joint endeavor with a law enforcement agency, then an officer would have a duty to assist. Barber testified that if there was not a joint endeavor between law enforcement agencies, an officer would be only be bound to perform those duties within his jurisdictional limits.

The Town argues the issue before the Court is factually analogous to Gibson, 773 F.3d 661, and Watts v. City of Jackson, 827 F.Supp. 2d 724 (S.D. Miss. 2011). As was noted in Gibson, the inquiry should consider whether the employee's complaint was made within the chain of command or to an outside actor, such as a different government agency or the media. Gibson, 773 F.3d at 670 (citing Davis, 518 F.3d at 313). Gibson admitted he worked with the FBI and DEA as part of his role as Chief of Police. Id. at 671. Gibson coordinated his department's resources with the Office of State Auditor, and instructed his employees to aid extensively in the investigation. Id. Gibson communicated his concerns about misuse of a gas card at the "Chief of Police Conference" to the Mississippi Attorney General in person, which the Fifth Circuit found was reasonable for Gibson to report while performing his official duties. Id. at 672. Gibson failed to establish additional facts that he was not acting pursuant to his official duties when he made his report to the Attorney General. Id.

By contrast, the complete record before the Court established no "ordinary" duty of Howell to act as a confidential informant for the FBI. Howell testified that cooperating with or assisting the FBI was never part of his "ordinary" duties.

11

Barber testified normal protocol was required before assisting an outside agency. Agent Deaton testified Howell had never worked with him before, and he was never an employee or undercover agent of the FBI. Agent Deaton testified Howell was a confidential informant. Unlike Gibson, working with the FBI was not part of Howell's "ordinary" role with the Ball Police Department.

The Court also finds Watts, although not controlling, factually distinguishable. Watts, a police officer, brought a First Amendment retaliation action in state court against the City of Jackson, former mayor Frank Melton, and various officers of county court. Watts, 827 F.Supp. 2d at 727. The FBI contacted Watts regarding potential illegal activity on part of Melton, an investigation that led to the federal indictment against Melton. Citing Garcetti, the district court found that a general job description is not outcome-determinative. Id. at 729.

In Watts, defendants offered evidence that Watts had a specific job requirement to cooperate with, and provide information to, the FBI when contacted. Additionally, defendants offered testimony of Deputy Chief Lee Vance and Sergeant Zachary Donaldson that they (Jackson Police Department) cooperated with the FBI on a weekly basis; that they did so as part of their official duties; and that they have been compensated for the time spent working with the FBI. Id. at 730.

Further, specifically related to that case, both Vance and Donaldson spoke with the FBI as part of their official duties, and were compensated for it. Id. The record in Watts established JPD officers, in routine compliance with the provision of the JPD Manual requiring such, cooperated with the FBI on a weekly basis. Id.

12

The court found that the participation of so many JPD officers in the investigation demonstrated that the duty to cooperate and disclose information found in the JPD Manual was applied to this investigation. Id. at 731. The court found the record indicated Watts's statements to the FBI were a specific job requirement. Id.

There, the FBI approached Watts, which the court found distinguished those cases exploring Garcetti in the context of whistle-blowers who "discover maleficence [sic] and externally report it with no official duty to do so." Id. The court found no evidence of how Watts acquired the information concerning the mayor, what Watts conveyed, or the full parameters of his "work[ ] with the FBI." Id. The court noted that without knowing the context, they could not say Watts met his burden of proving his "work[ ] with the FBI" occurred in his capacity as a "citizen" and not as a public employee, especially when the FBI was working with so many other JPD officers on the same investigation. Id.

Unlike the officers in Watts, Howell was not paid the remuneration as part of his "ordinary" duties, or as an undercover agent. No evidence was presented in the complete record before the Court establishing any such specific job requirement to act as a confidential informant for the FBI. Further, unlike Watts and Gibson, Howell was a sole actor in cooperating with the FBI, separate and apart from his "ordinary" duties as a police officer for the Town.

The parties also dispute the application of Lane v. Franks, 134 S.Ct. 2369 (2014), in this case. The Supreme Court in Lane noted the critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an

employee's duties, not whether it merely concerns those duties. Lane, 134 S.Ct. at 2379 (holding that "the sworn testimony in this case is far removed from the speech at issue in Garcetti – an internal memorandum prepared by a deputy district attorney for his supervisors recommending dismissal of a particular prosecution").

Edward Lane, as Director of Community Intensive Training for Youth (CITY), a statewide program for underprivileged youth, conducted an audit of the program which revealed Suzanne Schmitz, an Alabama State Representative on CITY's payroll, had not been reporting to her CITY office. Lane ultimately fired Schmitz. Id. at 2375. This drew the attention of the FBI, resulting in an investigation into Schmitz' employment with CITY. Id. Lane's "speech" – his testimony before a grand jury about his reasons for firing Schmitz – resulted in her indictment on four counts of mail fraud and four counts of theft concerning a program receiving federal funds. Id.

In granting summary judgment for the defendant, the district court concluded that, under Garcetti, Lane testified as an employee, not as a citizen. Id. at 2376. The Eleventh Circuit affirmed, reasoning that Lane's speech "owes its existence to [the] employee's professional responsibilities, finding that he spoke as an employee acting pursuant to his official duties when he investigated Schmitz' employment, spoke with Schmitz and CACC officials regarding the issue, and terminated Schmitz." Id. The Supreme Court found the Eleventh Circuit read Garcetti too broadly. Id. at 2379. The Court clarified that public employees' speech

14

is not protected by the First Amendment when they speak in the course of their "ordinary" job duties. Id. at 2378.

Howell's cooperation may have concerned his duties; but it did not fall within the ordinary scope of his duties. Howell's technical designation as a participant with the FBI, whether as a confidential informant or a confidential witness, is not dispositive of the issue before the Court.[3] What is dispositive is what he did as part of his "ordinary" duties on a day-to-day basis as a police officer for the Town.

The Town also presented Louisiana statutory and jurisprudential guidelines as to the general duties of all law enforcement officers, just as in the record before the Fifth Circuit in Howell. The undersigned took judicial notice of Article X, Section 30 of the Louisiana Constitution and Louisiana statutes offered by the Town.[4] The Town argues that pursuant to the laws of the State of Louisiana and federal law, Howell had a duty to report a crime, a duty within Howell's original job duties as a public employee pursuant to a constitutional oath. The Town made the same argument as was presented to the Fifth Circuit that an officer's general duties define the "ordinary" duties of Howell.

---

[3] The Town argued there may be some dispute regarding Howell's designation as a "confidential informant." Agent Deaton's testimony was clear that, although the terms had changed, Howell was classified as a confidential informant. The Court finds no genuine dispute of that fact. Even if disputed, however, the issue is not "material." Howell's speech – not his designation – is paramount.
[4] The Court took judicial notice of La. R.S. 42:161 ("Public officers to take constitutional oath"); La. R.S. 40:2402 ("Definitions", specifically that of a "Peace Officer"); and La. R.S. 14:134 ("Malfeasance in office"). La. R.S. 14:134 establishes that the crime of malfeasance in office is committed when any public officer or public employee intentionally refuses or fails to perform any duty lawfully required of him. The Town cites two Louisiana cases where police officers were charged and convicted of the crime for malfeasance for failure to report a crime. See State v. Phillips, 448 So.2d 235 (La. App. 5 Cir. 1984 and State v. Scheuering, 76 So.2d 921 (La. 1954).

15

The Fifth Circuit, however, disagreed. Howell, 827 F.3d at 524. The Town argues Howell had a statutorily mandated duty to report the FEMA fraud of the Town, or otherwise, face charges of malfeasance. However, Garcetti requires the Court to look more broadly to determine "which duties an employee is actually expected to perform." Garcetti, 547 U.S. at 424-25. The Town prefaced the additional evidence to be presented to this Court stating "additional testimony from Chief Caldwell, plaintiff himself, and any other current or former law enforcement officials would 'bear this out.'" (Doc. 222). Considering the complete record before the Court, the new testimony presented did nothing more than reassert general duties of a police officer, including the duty to report crimes pursuant to an officer's oath of office, subject otherwise to malfeasance. Just as was true of the record before the Fifth Circuit in Howell, the Court finds that is simply not enough.

Moreover, and critically, Howell received additional time on his paychecks as part of the FEMA fraud being investigated by the FBI. While Howell may have been motivated by duty and a desire to avoid a malfeasance charge, Howell had an additional motive: to avoid prosecution for FEMA fraud himself. That motive is a uniquely personal, and "private," driving force. And it also distinguishes this case from all others discussed herein. Howell also received $3,000.00 in relocation expenses from the FBI. The FBI offered this remuneration for his participation as a confidential informant. The relocation expenses were certainly not received as part of Howell's ordinary job duties. Instead, the remuneration plainly identifies activity separate from, and perhaps signaling the end of, Howell's job as a police officer.

16

In summary, Howell surreptitiously provided information to the FBI and did so with the aid of the FBI. Howell secretly cooperated with the FBI in investigating his coworkers and employer, Town of Ball. He wore a wire to a town meeting. He did this without his employer's knowledge and without his employer's authorization. He did so at the direction and instruction of the FBI, not the Town of Ball. He did so in part, because he feared being implicated in the fraud himself. And he received $3,000.00 in relocation expenses as a confidential informant.

These were not investigative duties that "ordinarily" fell within those of a public employee. Howell never conducted any undercover work with any outside law enforcement agency as part of his "ordinary" duties as a police officer. Howell was never required, as part of his "ordinary" duties, to "assist" the FBI. Howell had never, as part of his "ordinary" duties, worn a wire for any outside law enforcement agency. Any cooperation with outside agencies (local or state) was primarily to assist, and only in the capacity as back-up to the outside agency. Howell has never received payment from an outside agency for assistance provided while he was assisting with an outside agency's investigation.

The complete record before the Court establishes no genuine issue of material fact that Howell's "speech" was not "ordinarily" within the scope of Howell's duties as a police officer for the Town of Ball. In light of the Fifth Circuit's clear guidance, and considering the evidence presented by the parties, the Court cannot find Howell's cooperation was within his "ordinary" duties. As was true of the record before the Fifth Circuit, and with no substantially new evidence on this issue, there

remains "no evidence, other than the judicially established general description of a police officer's professional responsibilities in the state of Louisiana," that it was part of Howell's "normal job duties, secretly and without departmental authorization, to aid in an FBI investigation of coworkers and superiors, much less to record surreptitiously coworkers' conversations at the FBI's request." Howell, 827 F.3d at 524."

III. Conclusion

As a matter of law, Howell was speaking as a private citizen on a matter of public concern when he cooperated with the FBI. Partial summary judgment in Howell's favor is warranted.

Accordingly,

**IT IS ORDERED** sua sponte that the Partial Summary Judgment be and is hereby **GRANTED** in favor of Plaintiff on the sole issue that Plaintiff was speaking as a private citizen on a matter of public concern when he cooperated with the FBI. Plaintiff's speech was therefore entitled to First Amendment protection.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this 5th _____ day of September, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge