UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS R. HOWELL, Plaintiff | CIVIL ACTION NO. 1:12-CV-00951 |
| VERSUS | |
| TOWN OF BALL, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is a Motion for Judgment Notwithstanding the Verdict (Remittitur), For New Trial, to Amend or Alter Judgment, or Alternatively, Motion to Stay Proceedings to Enforce Judgment and/or Motion for Stay and to Dispense with Supersedeas Bond (the "Post-Trial Motion") (Doc. 252) filed by Defendant, the Town of Ball (the "Town"). The Court has already ruled upon the Town's request for a stay and to dispense with a supersedeas bond. Because the judgment (Doc. 248) includes amounts that should not have been included, the Town's request for remittitur will be granted in part, as set forth below.

I. Background

On September 8, 2017, following a four-day trial, a jury returned a verdict in favor of Plaintiff, Thomas R. Howell ("Howell"), awarding Howell damages in the amount of $257,419.00 on Howell's claims of First Amendment retaliation and under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h)(2). Specifically, the jury awarded Howell: (1) $111,000 in lost wages, which was doubled under the FCA as instructed;

and (2) $35,419.00 in damages for "past mental anguish and/or humiliation." (Doc. 245, p. 6). Post-trial motions followed.

The Court has already granted the Town's requests for a stay of proceedings to enforce the judgment under Fed. R. Civ. P. 62(b), and denied the Town's request to dispense with the supersedeas bond requirement. (Doc. 266). The Town now seeks a remittitur to account for earnings that were, according to the Town, erroneously included in the judgment.

II. Law and Analysis

Under Fed. R. Civ. P. 59(e), a party may request that a court alter or amend judgment within 28 days of the entry of judgment. Because the Town's motion was filed within 28 days, we may treat it as a "motion to alter or amend judgment" under Fed. R. Civ. P. 59(e), rather than "a motion for relief from judgment" under Fed. R. Civ. P. 60(b). See Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 187 (5th Cir. 2012).

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" See Templet v. HydroChem Inc., 367 F.3d 473, 478 (5th Cir. 2004). Thus, "[m]odifying or setting aside a judgment under Rule 59 is an extraordinary remedy; motions for new trial or to alter or amend a judgment should not be avenues for relitigating old matters, raising new arguments, or submitting evidence that could have been presented before." In re Xarelto (Rivaroxaban) Products Liab. Litig., MDL 2592, 2017 WL 6388508, at *2 (E.D. La. Dec. 14, 2017).

Further, because altering a judgment is an extraordinary remedy, the remedy should be used sparingly. Merritt Hawkins & Associates, L.L.C. v. Gresham, 861

2

F.3d 143, 157 (5th Cir. 2017). In deciding whether to amend a judgment, a court must balance "the need to bring litigation to an end" with "the need to render just decisions on the basis of all the facts." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). A court may amend a judgment only if one of the following three circumstances are present: "'(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.'" Alexander v. Wells Fargo Bank, N.A., 867 F.3d 593, 597 (5th Cir. 2017) (quoting Demahy, 702 F.3d at 182).

A manifest error is "is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" Pechon v. Louisiana Dep't of Health & Hosps., CIV.A. 08-0664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009), aff'd in part, appeal dismissed in part, 368 Fed.Appx. 606 (5th Cir. 2010) (quoting Venegas–Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004)). For instance, a miscalculation of a damages figure may constitute a manifest error of fact. See, e.g., Celtic Marine Corp. v. James C. Justice Companies, Inc., CV 11-3005, 2013 WL 12092707, at *3 (E.D. La. Nov. 22, 2013) ("Because the Court finds that the Partial Final Judgment was based on manifest errors of fact, arising from miscalculations, the Court will enter an amended, partial final judgment . . . .").

Moreover, the Town most directly seeks remittitur, which is a remedy available in only limited circumstances:

> Remittitur can be ordered in two ways. In the first, the plaintiff is offered a choice—accept the remittitur or a new trial will be ordered. See

Wright & Miller, 11 Fed. Prac. & Proc. § 2815 (3d ed.2012); Consol. Cos., 616 F.3d at 435. In the second, remittitur is ordered without offering the plaintiffs a new trial. This method is only permissible, without running afoul of the Seventh Amendment, where "'it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there.'" Consol. Cos., 616 F.3d at 435 (quoting Foradori v. Harris, 523 F.3d 477, 503 (5th Cir. 2008)).

Structural Metals, Inc. v. S & C Elec. Co., 590 Fed.Appx. 298, 302 (5th Cir. 2014).[1] A motion for remittitur may be made under, or in conjunction with, a motion under Fed. R. Civ. P. 59(e). See id. at 301-02.[2]

Courts may remit damages which are unsupported by evidence adduced at trial, or otherwise based upon miscalculations by the jury, as long as the error is apparent as a matter of law. For example, in Theriot v. Brit Systems, Inc., Theriot was awarded $97,458.00 in past commissions owed by the defendants. CV 11-1995, 2013 WL 12238852, at *1 (E.D. La. Apr. 23, 2013). The defendant, Brit, sought remittitur, because Theriot actually requested a lesser amount at trial – $85,544.85 – and only presented evidence sufficient to justify that amount. Id. However, Theriot claimed that the amount of loss he proved at trial was higher than the amount suggested by the defendant – $91,007.55 – and that the additional amount awarded by the jury could have represented "something additional for his aggravation." Id.

The court agreed that the jury could have properly awarded him the higher amount of loss established at trial. Id. at *2. But the Court held that "the jury was

---

[1] Because the remittitur sought pertains to an identifiable sum related to a discreet subset of the evidence – and not to any alleged error that may have affected the jury's verdict on the whole – and because the inclusion of an excessive sum is clear as a matter of law, only the second method of remittitur would be appropriate here.

[2] In a diversity action, the Court would be required to apply Louisiana's additur/remittitur statute, La. Code Civ. P. art. 1814. Federal question jurisdiction was present in this case.

4

not entitled to award 'something additional for his aggravation' because damages for the breach of a contractual obligation are properly measured 'by the loss, if any, sustained by the plaintiff, and the profit of which he has been deprived.'" Id. at *2. The court therefore reduced the jury's award to $91,007.55, the highest amount Theriot claimed he established at trial, less any amount awarded for Theriot's aggravation. Id.; see also Faulk v. Duplantis, CIV.A. 12-1714, 2014 WL 7006002, at *3 (E.D. La. Dec. 10, 2014) (remitting, by more than 50%, a jury's compensatory damages award, because "the award of $75,000 to [plaintiff] for past mental anguish is excessive as a matter of law in light of the evidence presented at trial").

Similarly, in Consolidated Companies, Inc. v. Lexington Insurance Company, the Fifth Circuit considered an insurer's motion for remittitur to correct a jury's alleged failure to deduct a $3 million advance insurance payment from its judgment. 616 F.3d 422, 435 (5th Cir. 2010). The case involved damages to a warehouse sustained during Hurricane Katrina. Id. The district court reasoned "that the jury's award of $24,669,787 (including $19,586,239 in business-interruption loss) is exactly the same as the 'entire amount of Conco's claim of $24,970,551, less $300,764 for repairs attributable to rusted metal decking on the roof, and does not consider the advance." Id. at 435. Therefore, the district court determined that "'the jury's failure to subtract $3,000,000 from the award [was] obvious and an oversight, and the correction of the error is mechanical.'" Id.

The payee, Conoco, argued that "because it presented the jury with two business-interruption figures ($19,379,642 and $24,174,527), 'it is plausible (if not

likely)' that the jury's finding that the business-interruption loss fell between those two figures represents a compromise among jurors who properly subtracted the $3 million advance." Id. The Fifth Circuit disagreed, observing that 'it [was] apparent from the exact figures used that the jury failed to take into account [the already paid $3 million].'" Id. Accordingly, "[t]his [was] the type of error where the 'oversight is patent and the correction mechanical.'" Id. at 436 (quoting Shingleton v. Armor Velvet Corp., 621 F.2d 180, 182 (5th Cir. 1980)).

This case presents comparable circumstances. The Town maintains the jury erred in awarding Howell $111,000 in damages for lost wages, because the evidence adduced at trial does not support that award.[3] Specifically, the Town argues that the jury failed to correctly calculate Howell's earned income for the year 2011, and to offset Howell's award for the full amount of that income. Howell argues that: (1) Howell's W-2 forms and income tax statements are "conflicting evidence"; (2) the jury was entitled to resolve any conflict in the evidence in Howell's favor; and (3) Howell's expert was never required to recalculate Howell's damages, meaning that the Town is now presenting "evidence" and argument which was not presented at trial.

The parties agree that, at trial, the jury received evidence of Howell's lost income from three – and only three – sources: (1) Howell's income tax returns; (2) Howell's past W-2 forms; and (3) the testimony of Dr. Robert Eisenstadt, an expert

---

[3] The Town acknowledges that the proper remedy for an excessive jury award – which was not based upon "passion or prejudice" – is remittitur, rather than a new trial. See Consol. Companies, Inc., 616 F.3d at 435. The Town does not specifically argue that the jury's award was based upon passion or prejudice. The Court can make no such independent finding. The more appropriate remedy to consider in this case, then, is remittitur.

6

economist retained by Howell. And the evidence from these three sources is undisputed. All relevant exhibits and testimony were admitted at trial without objection.

Dr. Eisenstadt testified that Howell suffered a total of $111,391 in lost earnings as a result of his termination. (Doc. 252-3, p. 9). Dr. Eisenstadt arrived at this figure by subtracting Howell's earned income from his estimated annualized earnings as an employee of the Town. (See id.). The jury awarded Howell "[b]ack pay (past loss of income)" in the amount of $111,000.00, presumably disregarding the $391 figure for ease of calculation. (Doc. 245, p. 6). The jury then doubled that figure, as instructed, pursuant to the FCA. (Id.).

Dr. Eisenstadt calculated Howell's estimated annualized income for 2011 to be $40,401. Howell's 2011 income tax return reflects reported earnings of $7,828.00. (Doc. 241-2, p. 11). Dr. Eisenstadt testified that he based his calculations of Howell's lost earnings for 2011 upon that reported figure. (Doc. 252-3, p. 28). Dr. Eisenstadt subtracted Howell's reported earnings ($7,828) from his estimated annualized earnings with the Town ($40,401) to arrive at a figure of $32,573 in lost earnings for the year 2011.

On cross examination, however, Dr. Eisenstadt clearly testified that his calculations for the year 2011 would have been different had he used Howell's W-2 forms, instead of Howell's tax returns, to calculate his lost wages. (Doc. 252-3, pp. 28-30). Specifically, Dr. Eisenstadt stated: "If the W-2 is in fact the accurate reflection

7

– and I have no reason to believe it otherwise – then [Howell's lost wages figure] would change." (Id., p. 30).

In fact, Howell's 2011 W-2 forms do evidence additional earnings not included in Dr. Eisenstadt's calculations. Howell's W-2 forms reflect total earnings of $26,148.01 for the year 2011, rather than the $7,828 used by Dr. Eisenstadt in his calculations. (Doc. 241-17). This evidence is undisputed.

At trial, Dr. Eisenstadt was never shown Howell's 2011 W-2 forms by either party. But his testimony was clear that he would have deducted earnings reported on W-2 forms, and not on Howell's tax returns, from Howell's lost wages figure, and that his calculations would necessarily change as a result. Moreover, in closing argument, counsel for the Town argued that Dr. Eisenstadt's calculations for the year 2011 were incorrect:

> Dr. Eisenstadt also stated that with regards to the 2011 income - - you have the tax returns in evidence. You have the W-2's for 2011. He had based his first set of figures on a $7,300 yearly income. There was over $16,000 that hadn't been reported that year. Dr. Eisenstadt's numbers are malleable depending on the facts. You have more facts than Dr. Eisenstadt had.

(Doc. 271, p. 66).

In light of this evidence, testimony, and argument, Howell's W-2 forms and income tax statements cannot be considered "conflicting evidence" in the sense suggested by Howell. Rather, as Dr. Eisenstadt testified, Howell's income tax forms simply did not include figures from his W-2 forms which should have been included. Dr. Eisenstadt admitted that his calculations were, in fact, incorrect if they did not

8

include additional wages reported on Howell's W-2 forms. The undisputed evidence shows that to have been the case.

Further, counsel for the Town raised the issue during cross examination and closing argument, and is thus not raising new arguments to obtain a remittitur. The Court agrees with Howell that a more effective approach at trial would have been to show Dr. Eisenstadt, the jury, or preferably both, those precise calculations, and to argue with more specificity that deductions were not made. But the argument's purported ineffectiveness does not make it new or untimely. The evidence, testimony, and arguments were presented to the jury, all without objection or contest.

Given the joint admission of Howell's 2011 W-2 forms, Dr. Eisenstadt's testimony indicating those forms would change his calculations of Howell's lost wages, and the absence of additional or countervailing evidence of Howell's earnings for 2011 (or any other basis for calculating his lost wages), the calculations of Howell's lost wages for 2011, as a matter of law, included amounts that should not have been included. The award should be reduced to reflect that variation.

Specifically, Howell's 2011 earnings of $26,148.01 should be subtracted from Howell's estimated annualized earnings of $40,401 to arrive at a lost wages figure of $14,252.99 for 2011. The difference between the 2011 lost wages figure of $32,573 used by Dr. Eisenstadt and the actual lost wages figure of $14,252.99 is $18,320.01. This figure represents the amount of miscalculation of Howell's lost earnings for 2011. And when doubled (as required by the FCA), the judgment includes a

9

miscalculation of $36,640.02 in damages for lost wages. The Town's motion will be granted in part to the extent it seeks a remittitur of this amount.

The Town also claims that the judgment should be reduced by an additional $6,000, which represents double a $3,000 payment Howell received from the FBI for acting as a confidential informant. It is undisputed that Howell received this payment. But there is insufficient evidence in the record to determine whether Howell included this payment in the income he reported on his 2011 tax return, or whether the payment is accounted for in some other way. Thus, the judgment will not be reduced to account for this payment.

III. Conclusion

For the foregoing reasons, the Motion for Judgment Notwithstanding the Verdict (Remittitur), For New Trial, to Amend or Alter Judgment, or Alternatively, Motion to Stay Proceedings to Enforce Judgment and/or Motion for Stay and to Dispense with Supersedeas Bond (the "Post-Trial Motion") (Doc. 252) filed by Defendant, the Town of Ball (the "Town") is hereby GRANTED IN PART. The verdict in Howell's favor for "Back pay (past loss of income)" in the amount of $222,000 is hereby REDUCED by $36,640.02 to $185,359.98. The total amount of the judgment in Howell's favor is therefore REDUCED to TWO HUNDRED TWENTY THOUSAND SEVEN HUNDRED SEVENTY-EIGHT DOLLARS AND NINETY-EIGHT CENTS ($220,778.98).

The Motion for Judgment Notwithstanding the Verdict (Remittitur), For New Trial, to Amend or Alter Judgment, or Alternatively, Motion to Stay Proceedings to

Enforce Judgment and/or Motion for Stay and to Dispense with Supersedeas Bond (the "Post-Trial Motion") (Doc. 252) filed by Defendant, the Town of Ball (the "Town") is hereby DENIED IN PART to the extent it seeks a remittitur of additional amounts.

THUS DONE AND SIGNED in Alexandria, Louisiana, this 26th day of January, 2018.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE